[Cite as *State v. Eichenlaub*, 2026-Ohio-2.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | C.A. No. 30455 |
| Appellee | : | |
| | : | Trial Court Case No. 2023 CR 02635 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| URIAH CHRISTOPHER EICHENLAUB | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on January 2, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

HUFFMAN, J., and HANSEMAN, J., concur.

MICHAEL O. MILLS, Attorney for Appellant
SARAH H. CHANEY, Attorney for Appellee

TUCKER, J.

{¶ 1} Uriah Christopher Eichenlaub appeals from his convictions of one count of rape and two counts of gross sexual imposition involving a child under age ten.

{¶ 2} Eichenlaub contends the trial court erred in overruling his motion to suppress statements he made before being advised of his *Miranda* rights. He also argues that the trial court erred in overruling his motion for separate trials where separate indictments charged him with sex crimes involving different children. Finally, he challenges the legal sufficiency and manifest weight of the evidence sustaining some of his convictions.

{¶ 3} We see no error in the trial court's refusal to suppress Eichenlaub's statements, which were not the product of a custodial interrogation. The trial court did not err in refusing to order separate trials because the evidence of each crime was simple and distinct. The record also contains legally sufficient evidence to sustain Eichenlaub's convictions, and they are not against the manifest weight of the evidence. Accordingly, the trial court's judgment is affirmed.

**I. Background**

{¶ 4} A grand jury indicted 25-year-old Eichenlaub on one count of rape and two counts of gross sexual imposition involving A.E., his seven-year-old cousin. He later was indicted on three additional counts of gross sexual imposition involving B.E., who was A.E.'s older sister. Following his indictment, Eichenlaub moved for separate trials on the two indictments. The trial court found separate trials unnecessary because the alleged offenses

2

were of the same or similar character and Eichenlaub would not be prejudiced by joinder. He also moved to suppress statements he made before being advised of his *Miranda* rights. The trial court overruled the motion, finding *Miranda* not applicable because Eichenlaub was not in custody when he made the statements at issue. The case proceeded to a jury trial in March 2025.

{¶ 5} The State's evidence established that A.E. was residing in a house with her mother, her father, and several other family members on the night of September 4, 2023. The occupants of the house included Eichenlaub, who was the nephew of A.E.'s father. Eichenlaub had just moved into the house and was spending his first night there. The house was equipped with interior security cameras that were recording continuously. Before midnight, A.E. and a young sibling fell asleep on a mattress in a first-floor playroom. A.E.'s mother was upstairs relaxing when she heard the family dog bark and a door slam downstairs. Upon investigating, A.E.'s mother was surprised to find the child on the floor near the stairway with the front door open. In another room, she found A.E.'s father asleep. Unsure about what was happening, A.E.'s mother reviewed surveillance video on a monitor. She saw a recording of Eichenlaub hiding in her children's closet taking pictures of them and photographing A.E. in the playroom. She also saw video of Eichenlaub taking pictures while putting his fingers inside of a "pull-up" that A.E. was wearing when the child was sleeping on a couch. After viewing the recordings, A.E.'s mother awakened the child's father and shared the videos with him. A.E.'s father found Eichenlaub sitting in a car outside and confronted him. According to A.E.'s mother, Eichenlaub explained that he wanted to get the child a bicycle and was trying to see if she would fit a particular seat.

{¶ 6} Shortly thereafter, Deputy Sheriff Thomas Barnes arrived at the scene in response to a call from A.E.'s mother. Barnes observed A.E.'s father and Eichenlaub

3

standing outside the house. Barnes separated the two men by escorting Eichenlaub to the back seat of his cruiser. Barnes asked whether Eichenlaub knew why the police had been called. Eichenlaub stated that there were fleas or other insects in the house and that he had examined A.E. with the light on his cell phone to see what the bites looked like. Eichenlaub acknowledged looking in "places that would be inappropriate." After Eichenlaub asserted that A.E. had bug bites, Barnes examined exposed areas of the child's body and saw no evidence of any bites. Barnes then reviewed the surveillance video depicting Eichenlaub's interaction with the child. After doing so, the deputy placed Eichenlaub under arrest and began to transport him to the police station. Eichenlaub asked for a window to be rolled down so he could get some air. Barnes responded that he would turn up the air conditioning to provide relief. Eichenlaub then stated, "It's okay. I'm going to have a much worse time downtown, as I deserve." Eichenlaub also asked whether he had "hurt" A.E.

{¶ 7} A detective met with Eichenlaub at the police station. Upon being advised of his *Miranda* rights, Eichenlaub declined to make any statements. An examination of his cell phone failed to reveal any incriminating pictures. The State's cell phone examiner was unable to determine whether Eichenlaub had taken pictures and then deleted them. As for A.E., she was examined at an area hospital. The results of the examination were inconclusive. The nurse examiner saw no evidence of injury to A.E.'s vaginal area and could not say whether any penetration had occurred. DNA testing of swabs taken from A.E.'s vaginal area revealed no DNA profile foreign to A.E. The State's expert noted, however, that the absence of DNA did not mean that no one had touched the child. In this case, the expert was unable to opine either way based on the DNA test results.

{¶ 8} A.E.'s older sibling B.E. also testified about separate earlier encounters she had with Eichenlaub that involved him touching her body. On each occasion, she awoke when

4

she felt her body being touched. She did not see Eichenlaub touching her, but she testified that he was in the room when she awoke.

{¶ 9} Regarding A.E., a jury found Eichenlaub guilty on one count of rape of a victim under age 10 and two counts of gross sexual imposition involving a victim under age 13. The jury found him not guilty on the three counts of gross sexual imposition involving B.E. The trial court imposed an aggregate sentence of 25 years to life in prison. It also designated Eichenlaub as a Tier III sex offender. He timely appealed, advancing three assignments of error.

## II. Analysis

{¶ 10} Eichenlaub's first assignment of error states:

**THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS.**

{¶ 11} Eichenlaub challenges the trial court's finding that he was not in custody when Deputy Barnes escorted him to the rear of a police cruiser and asked whether he knew why the police had been called. His argument appears to challenge the admissibility of his response about insects being in the house and checking A.E. for bug bites.

{¶ 12} The trial court found that Eichenlaub was detained during the exchange in the sense that he was not free to leave, that he had not been formally arrested, and that he had not been *Mirandized* when Barnes asked if he knew why police had been called. The trial court reasoned that the deputy's investigation remained ongoing because he had not yet spoken to the complaining witnesses. After considering various pertinent factors, the trial court held that Barnes' initial questioning was not a custodial interrogation requiring *Miranda* warnings. The trial court noted that Eichenlaub was on a public street seated in the rear of a police cruiser. He was not handcuffed, and the cruiser's door was open. The trial court

5

further noted that Barnes told Eichenlaub that he was not under arrest and that he was being detained until the deputy could speak to all the parties. The trial court pointed out that part of the purpose for the detention was to protect Eichenlaub due to "escalating emotions" exhibited by A.E.'s parents. Although Eichenlaub was a suspect, the trial court found that no threats were made by Barnes, Eichenlaub was not physically intimidated, and Barnes did not dominate the conversation or do anything overpowering, deceptive, or coercive.

{¶ 13} With virtually no factual analysis, Eichenlaub insists that he was in custody for *Miranda* purposes the moment Barnes placed him in the police cruiser. He asserts that "[t]his was not a mere traffic stop or consensual encounter." Eichenlaub argues that his own relatives had called the police and were "waiting for the police to arrive knowing he would be taken into custody."

{¶ 14} Upon review, we see no error in the trial court's suppression ruling. Police are not required to administer *Miranda* warnings to everyone they question. *State v. Keggan*, 2006-Ohio-6663, ¶ 29 (2d Dist.). Only custodial interrogations require such warnings, and not all seizures result in a suspect being in custody. *Id*. at ¶ 29-30. Under *Terry v. Ohio*, 392 U.S. 1 (1968), for example, an officer briefly may detain an individual if the officer has a reasonable, articulable suspicion of criminal activity. Detention under *Terry* "is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. An investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions." *Keggan* at ¶ 30. "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." (Citations omitted.) *Id*. "The test for determining if a seizure is an arrest rather than a *Terry*-type

6

detention is if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." (Citations omitted.) *Id*.

{¶ 15} Here the trial court correctly analyzed the totality of the circumstances and highlighted several relevant facts that led it to conclude Eichenlaub had been detained but was not yet in custody when Deputy Barnes asked if he knew why law enforcement had been called. The suppression hearing record supports the trial court's conclusion. Although Eichenlaub was seated in a police cruiser and was not free to leave, these facts were not dispositive. *Id*. at ¶ 37. In *Keggan*, we found no custodial interrogation where an unhandcuffed suspect was placed in a cruiser at least in part for his own protection and told that he was not under arrest while police investigated a complaint against him. We reach the same conclusion here. Barnes placed Eichenlaub in the cruiser in part to protect him from A.E.'s angry parents, one of whom already had struck Eichenlaub with a belt, while the deputy reviewed the video and investigated the allegations that led to the deputy being called to the scene. Because Eichenlaub was not in custody when Barnes asked if he knew why the police had been called, *Miranda* warnings were not required. Therefore, the trial court correctly overruled the suppression motion. The first assignment of error is overruled.

{¶ 16} The second assignment of error states:

**THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR SEPARATE TRIALS.**

{¶ 17} Eichenlaub contends the trial court erred in overruling his motion for severance, which sought separate trials on the charges involving A.E. and B.E. He argues that the trial court's failure to conduct separate trials prejudiced him because the evidence involving the two alleged victims was not "simple and direct."

{¶ 18} Upon review, we find Eichenlaub's argument to be unpersuasive. The remedy if a defendant disputes the propriety of joinder is a Crim.R. 14 motion to sever charges. When severance is sought, the issue is whether joinder results in prejudice. *State v. Lott*, 51 Ohio St.3d 160, 163 (1990). "A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." *State v. Torres*, 66 Ohio St.2d 340 (1981), syllabus.

{¶ 19} "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992), citing *State v. Hamblin*, 37 Ohio St.3d 153, 158-159 (1988). "Under the second method, the 'joinder' test, the state is not required to meet the stricter 'other acts' admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct." *Lott* at 163, citing *State v. Roberts*, 62 Ohio St.2d 170, 175 (1980). "Thus, when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." *Id*. Evidence is "simple and direct" where (1) proof of each offense is "separate and distinct" or could be "readily separated"; (2) the jury is unlikely to be confused; and (3) "the evidence of each crime is uncomplicated." *State v. Coley*, 93 Ohio St.3d 253, 260 (2001); *State v. LaMar*, 2002-Ohio-2128, ¶ 52; and *State v. Clinton*, 2017-Ohio-9423, ¶ 52.

{¶ 20} Eichenlaub asserts that joinder was improper because the evidence related to the charges involving A.E. and B.E. was not "direct." He notes that B.E. did not directly identify him as having touched her body. Rather, she testified about his presence in the room after she felt someone touching her. Regarding A.E., Eichenlaub contends the video of him reaching inside her pull-up was not direct evidence of rape because it did not show penetration. Eichenlaub appears to reason that the State relied on circumstantial evidence, rather than direct evidence, because the jury was asked to infer that he had touched B.E. and had penetrated A.E.'s vagina with his finger.

{¶ 21} Eichenlaub's argument overlooks the fact that the trial court also found joinder proper based on its belief that the evidence in each case would be admissible in the other case under Evid.R. 404(B) if separate trials were held. His appellate brief fails to address this aspect of the trial court's ruling. In any event, even on the issue he does address, his argument lacks merit. Contrary to the implication of his brief, "[c]ircumstantial evidence can be 'simple and direct' for purposes of joinder." *State v. Carter*, 2022-Ohio-3806, ¶ 16 (9th Dist.), citing *State v. Sadler*, 2006-Ohio-6910, ¶ 9 (9th Dist.).

{¶ 22} As noted above, the "simple and direct" test for joinder involves considering whether proof of each offense is easily separated, the jury is unlikely to be confused, and the evidence of each crime is uncomplicated. The trial court correctly found these requirements satisfied. The primary evidence supporting the charges involving A.E. was the video recording of Eichenlaub's interaction with her. The primary evidence supporting the charges involving B.E. was her testimony about feeling someone touching her and then seeing Eichenlaub in the room. Based on our review of the record, we conclude that the State's proof of each offense was separate and distinct, the jury was unlikely to be confused, and the evidence of each crime was uncomplicated. The jury's ability to separate the

9

evidence in the two cases was demonstrated by the fact that it convicted Eichenlaub of the charges involving A.E. while acquitting him of the charges involving B.E. The second assignment of error is overruled.

{¶ 23} The third assignment of error states:

**THE STATE OF OHIO FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTIONS FOR RAPE AND GROSS SEXUAL IMPOSITION AND THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶ 24} Eichenlaub challenges the legal sufficiency and manifest weight of the State's evidence to prove that he raped A.E. by penetrating her vagina with a finger. He notes the lack of physical evidence of penetration and argues that the video did not show what his hand was doing inside the child's pull-up.

{¶ 25} Eichenlaub also challenges the legal sufficiency and manifest weight of the evidence to support a conviction for gross sexual imposition involving B.E. He notes that B.E. did not see him touching her and only saw him in the room after realizing that she had been touched.

{¶ 26} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶ 27}** Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶ 28}** With the foregoing standards in mind, we reject Eichenlaub's legal-sufficiency and manifest-weight arguments as they pertain to his rape conviction involving A.E. Eichenlaub relies exclusively on an alleged lack of evidence that he penetrated A.E.'s vaginal area with his finger. He correctly notes that at least slight penetration was required to establish the "sexual conduct" element of rape. *See* R.C. 2907.01(A). He argues that the State's primary evidence, the video recording of the incident, did not show what he was doing with his fingers inside the victim's pull-up.

**{¶ 29}** Upon review, we find Eichenlaub's argument to be unpersuasive. Although the video evidence did not show his fingers inside of A.E.'s vagina, a rape conviction may be predicated on circumstantial evidence of penetration. *State v. McNeal*, 2019-Ohio-2941, ¶ 71 (2d Dist.). The video recording depicted Eichenlaub moving his hand inside the victim's pull-up for approximately three minutes. He also licked one of his fingers multiple times before placing his hand inside the pull-up. This act supports a reasonable inference that he was facilitating penetration. *See*, *e.g.*, *State v. Arcuri*, 2016-Ohio-8254, ¶ 69 (11th Dist.) ("That it was Arcuri's intention to penetrate L.H. digitally is evidenced by the fact that L.H.

11

testified that, in each instance, Arcuri lubricated his fingers by licking them."); *State v. Prine*, 287 Kan. 713, 739-740 (2009), superseded by statute on other grounds (recognizing that a "common-sense inference of penetration" may be drawn when a defendant licks his fingers before touching a victim's vaginal area).

{¶ 30} The jury also may have inferred penetration from Eichenlaub's inquiry while being transported to jail about whether he had "hurt" A.E. Although phrased as a question, the inquiry implicitly acknowledged that he had done something potentially capable of hurting the child. The jury reasonably could have found that touching A.E. inside the pull-up would not "hurt," whereas penetration with a finger could have caused the child to experience pain.

{¶ 31} Having reviewed the record, we believe a rational trier of fact could have found the elements of rape proven beyond a reasonable doubt. The jury also did not lose its way and create a manifest miscarriage of justice by convicting Eichenlaub of rape. The conviction is supported by legally sufficient evidence and is not against the weight of the evidence.

{¶ 32} Finally, we need not address Eichenlaub's legal-sufficiency and manifest-weight argument addressing gross sexual imposition as to B.E. The jury acquitted Eichenlaub of all three charges related to B.E. His argument involves an apparent misreading of the jury verdicts insofar as he suggests that he was convicted of one of those charges. The third assignment of error is overruled.

### III. Conclusion

{¶ 33} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

HUFFMAN, J., and HANSEMAN, J., concur.